UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD V., | Case No.:  19-cv-01660-JLB |
| Plaintiff, | |
| | **ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** |
| v. | |
| ANDREW SAUL, Acting Commissioner of Social Security, | |
| Defendant. | |
| | **[ECF Nos. 18; 25]** |

Plaintiff Richard V. has filed a complaint pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review the Commissioner of Social Security's decision denying his application for Supplemental Security Income ("SSI").  (ECF No. 1.)

Now pending before the Court and ready for judicial decision are the parties' cross-motions for summary judgment.  For the reasons set forth below, the Court **GRANTS** Plaintiff's Motion for Summary Judgment (ECF No. 18), **DENIES** the Commissioner's Cross-Motion for Summary Judgment (ECF No. 25), reverses the decision of the Commissioner, and remands this matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

///

///

## I.   **PROCEDURAL BACKGROUND**

On December 22, 2016, Plaintiff filed an application for SSI alleging disability beginning June 1, 2014.  (Administrative Record ("AR") 149.)  After his application was denied initially and upon reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ") on August 28, 2017.  (AR 62, 74, 90.)  On January 17, 2019, Plaintiff, his attorney, and vocational expert Mark Remas ("the VE") appeared before ALJ Eric V. Benham ("the ALJ").  (AR 28.)  In a decision dated March 14, 2019, the ALJ found that Plaintiff was not disabled as defined by the Social Security Act.  (AR 10–17.)  The ALJ's decision became the final decision of the Commissioner on June 27, 2019, when the Appeals Council denied Plaintiff's request for review.  (AR 1.)  Plaintiff then timely commenced this action for judicial review.  (ECF No. 1.)

## II.   **SUMMARY OF THE ALJ'S FINDINGS**

In rendering his decision, the ALJ followed the Commissioner's five-step sequential evaluation process.  *See* 20 C.F.R. § 416.920.  At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 5, 2016.[1]  (AR 12.)

At Step Two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, degenerative joint disease, and obesity.  (*Id.*)

At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the Commissioner's Listing of Impairments.  (AR 12–13.)

Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. § 416.967(b), except that:

> he can carry 20 pounds occasionally, 10 pounds frequently; stand and/or walk for 6 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday; occasionally push and/or pull with the upper extremities and the left lower

---

[1]   The ALJ refers to December 5, 2016, as Plaintiff's application date, but the application date in the record before the Court is December 22, 2016.  (AR 149.)

extremity; occasionally crouch, kneel, crawl; and avoid exposure to pulmonary irritants and temperature extremes.

(AR 13.)

At Step Four, the ALJ compared the RFC assessed to the demands of Plaintiff's past relevant work as a carpenter, Dictionary of Occupational Titles ("DOT") No. 860.381-022, and newspaper delivery driver, DOT No. 292.363-010.  (AR 15.)  The ALJ accepted the VE's testimony that a hypothetical person with Plaintiff's age, education, work experience, and RFC would be unable to perform work as a carpenter or newspaper delivery driver, either as actually done or as generally done in the national economy.  (AR 16.)

At Step Five, the ALJ determined that Plaintiff could perform other jobs that exist in significant numbers in the national economy.[2]  (*Id.*)  The ALJ accepted the VE's testimony and found that a hypothetical person with Plaintiff's age, education, work experience, and RFC would be able to perform the requirements of a: bench assembler, DOT No. 706.684-022, with 50,000 national jobs; survey worker, DOT No. 205.367-054, with 104,000 national jobs; and inspector/packager, DOT No. 559.687-074, with 100,000 national jobs.  (AR 16–17.)  After concluding that Plaintiff could make a successful adjustment to other work that exists in significant numbers nationally, the ALJ found Plaintiff not disabled under the Social Security Act.  (AR 17.)

---

[2]   The Court takes issue with the Commissioner's statement in his opposition that "at all times, the burden is on the claimant to prove that he is unable to work and is disabled." (ECF No. 25 at 9.)  This is an incorrect representation of the law, for "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy."  *Hill v. Astrue*, 689 F.3d 1153, 1161 (9th Cir. 2012); *accord Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001) ("The claimant has the burden of proof for steps one through four, and the Commissioner has the burden of proof for step five." (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999))); *see also* 20 C.F.R. § 416.912(b)(3) ("In order to determine . . . that you are able to adjust to other work, we must provide evidence about the existence of work in the national economy that you can do . . . .").

### III.   STANDARD OF REVIEW

The Social Security Act allows for unsuccessful applicants to seek judicial review of the Commissioner's final agency decision.  42 U.S.C. § 405(g).  The scope of judicial review, however, is limited.  The Commissioner's final decision should not be disturbed unless: (1) the ALJ's findings are based on legal error; or (2) the ALJ's determinations are not supported by substantial evidence in the record as a whole.  *See Schneider v. Comm'r of Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000).  Substantial evidence is "more than a mere scintilla, but may be less than a preponderance."  *Lewis v. Apfel*, 236 F.3d 503, 509 (9th Cir. 2001).  Substantial evidence is "relevant evidence that, considering the entire record, a reasonable person might accept as adequate to support a conclusion."  *Id.*; *accord Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1011 (9th Cir. 2003).

In making this determination, the Court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion.  *See Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988).  Where the evidence can reasonably be construed to support more than one rational interpretation, the Court must uphold the ALJ's decision.  *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  This includes deferring to the ALJ's credibility determinations and resolutions of evidentiary conflicts.  *See Lewis*, 236 F.3d at 509.

### IV.   PLAINTIFF'S CLAIMS OF ERROR

Plaintiff raises the following claims of error in his Motion for Summary Judgment:

1.      The ALJ failed to set forth clear and convincing reasons for discrediting Plaintiff's symptom testimony.

2.      The ALJ rejected the opinion of treating orthopedist Dr. Steven Allsing that Plaintiff was limited to sedentary work with no reaching above shoulder level without setting forth specific, legitimate reasons supported by substantial evidence in the record.

///

///

1

## V.   <u>DISCUSSION</u>

2

**A.    The ALJ's Credibility Determination**

3

        1.    <u>Parties' Arguments</u>

4

     The Court first addresses Plaintiff's claim that the ALJ erred by failing to set forth

5

clear and convincing reasons for discrediting his symptom testimony.  Plaintiff contends

6

that the ALJ did not "set forth a single reason for failing to credit [his] testimony and

7

subjective symptoms of pain," let alone a clear and convincing one.  (ECF No. 18 at 15.)

8

In response, the Commissioner maintains that the ALJ provided three clear and convincing

9

reasons for discrediting Plaintiff's symptom testimony: lack of objective medical evidence,

10

evidence of non-compliance with prescribed treatment, and inconsistency with the

11

objective medical opinions.  (*See* ECF No. 25 at 15–18.)

12

        2.    <u>Summary of Plaintiff's Symptom Allegations</u>

13

             a.    *Plaintiff's Symptom Testimony at the Administrative Hearing*

14

     Plaintiff worked in construction for fifteen years, and before that he delivered

15

newspapers for seventeen years.  (AR 33, 45.)  When the ALJ asked Plaintiff what

16

problems keep him from being able to work, Plaintiff testified as follows:

17

> My arms, my leg and my back. . . .  [T]he pain is so bad that my eyes are
> pulsating.  When I, I'm sorry if I, when I look at you it's just I can't see clear.

18

> I had conjunctivitis real bad and since that time, I had it for a couple of years

19

> and my eyes just really, they get intensified with the pain.  It's very difficult
> to sleep.  I don't sleep more than 20 minutes before I have to move because

20

> of the pain.  It's just a lot of pain, you know.  If I was a dog, they'd put me

21

> down.

22

(AR 33.)

23

     Plaintiff suffers from impingement syndrome bilaterally in his shoulders.  (*E.g.*, AR

24

334.)  He contends that he injured his shoulders in the course of his work, and the pain "got

25

really, really bad" in 2013.  (AR 36.)  He has pain in his arms "all the time, just different

26

degrees of pain."  (AR 42.)  Plaintiff elaborated on the problems with his shoulders and

27

arms, stating:

28

///

> I can't lift them, I can't raise them and I can't put them backwards.  And I
> can't put it over my head because it pinches on the nerve and they swell up
> real bad . . . .  [T]here [are] multiple tears in the biceps and the triceps in both
> arms.  And there is impingement up in the top, so I can't actually physically
> move them that way.

(AR 35.)

When the ALJ asked Plaintiff, "So you can't reach overhead at all?" Plaintiff answered no.  (AR 35.)  He further stated that he can only "reach out for short periods of time" before "the pain . . . get[s] going."  (AR 35–36.)  Plaintiff estimated that heaviest weight he could lift while seated at a table and without causing himself undue pain would be "two pounds maybe"; any heavier weight would hurt his shoulders.  (AR 38.)  He estimated that he could extend his arms in front of him for about ten minutes, but after ten minutes he would start to feel pain and his arms would swell.  (AR 41.)  He estimated that he could hold a grocery bag weighing a maximum of ten pounds down by his side.  (AR 39.)  This would still cause him pain, but "not as bad as lifting [the grocery bag] up."  (*Id.*)  He is most comfortable when his hands are in his lap.  (AR 41.)  He has difficulty driving due to his shoulder and arm pain.  (AR 41–42.)

Plaintiff suffers from degenerative disc disease in his lumbar spine.  (*E.g.*, AR 766–67.)  As to his lower back pain, Plaintiff testified as follows:

> [S]ometimes it'll be where I can't get off wherever I'm sitting.  I can't get up
> at all.  And then other times it just, it's just painful.  And I don't know what it
> is, but there is something going on in there. . . .  [I]t's affecting my whole
> spine all the way up and it's affecting my eyes and I get migraines when I
> move too much.

(AR 37.)

Plaintiff suffers from a meniscal tear in his left knee.  (AR 37; *e.g.*, AR 709, 716.)  Because of his knee pain, he estimated that he could stand for thirty or forty minutes and walk for five minutes.  (AR 39.)  When he walks, his knee "blows up twice as big," which "makes it real[ly] difficult for the knee to work."  (*Id.*)  He cannot crawl or "lean down,"

///

6

and lifting, leaning, or bending causes his leg to swell instantly or "within a day." (AR 40.) When his knee is swollen, it is "really difficult" for him "to move it." (*Id.*)

Plaintiff also suffers from Type II diabetes. When the ALJ asked Plaintiff if his diabetes caused any problems, he testified as follows:

> It causes a lot of problems because it's hard for me to take the medication that I am on because, well . . . if you look at the list of medication there [are] 20 medications, so all during the day I have to take it at different times. You're supposed to refrigerate it. I can't refrigerate it. I don't have a refrigerator. I'm supposed to be on a sleep apnea machine, but I can't do that either . . . . So my breathing is real bad. I have obstruction in my lungs. I have COPD. And like I said, I have diabetes, high cholesterol medicine and heart medicine.
>
> . . .
>
> [Diabetes] causes a lot of [problems]. You get weak. You get dizzy. You get blurry.

(AR 34–35.) Plaintiff further testified that he experiences numbness and tingling in his feet, hands, and left leg. (AR 35.)

        b.    *Plaintiff's Symptom Statements in His Exertion Questionnaire and Disability Reports*

Plaintiff has constant pain in his shoulders/arms and leg. (AR 181.) He cannot move his arms without pain. (AR 201.) He cannot pick anything up because the "roler cups in his arms are out."[3] (AR 181.) He cannot climb stairs or his leg will swell. (*Id.*) He also has pain in his feet and legs due to his diabetes. (AR 185.)

Plaintiff has too much pain to do any daily activities, and he feels like he is "falling apart." (AR 181, 189.) He cannot lift or carry anything but can sometimes do his own grocery shopping. (AR 182.) He can drive short distances, but it is difficult for him to get in and out of his truck. (*Id.*) He cannot work on cars or do yard work, and he was able to

---

[3]    The Court understands Plaintiff's reference to "roler cups" to mean rotator cuffs.

do these chores before he became disabled.  (AR 182–83.)  He has pain all the time "doing anything."  (AR 183.)

Plaintiff has pain when he sleeps and experiences cramps that wake him up.  (*Id.*)  He has difficulty sleeping due to the pain in his arms and shoulders.  (AR 185, 189–90, 197, 201.)  He wakes up every fifteen to twenty minutes because of his pain.  (AR 183, 190.)  He requires rest periods or naps during the day because he is "always tired" from not being able to sleep.  (AR 183.)

c.    *Plaintiff's Symptom Statements from His Medical Records*

Plaintiff has complained of chronic, bilateral shoulder pain beginning in 2012.  (AR 258, 276, 296, 332, 476, 482, 486, 499, 589, 646, 658, 666, 672, 676.)  Plaintiff contends that his shoulder impairments stemmed from his work delivering newspapers.  (AR 258, 666.)  He is in constant pain due to his shoulder impairments and experiences intermittent numbness in his arms and fingers.  (AR 296, 332, 727.)  His pain is aggravated when he reaches overhead or behind his back or when lifting heavy objects.  (AR 258, 296, 332, 476, 578.)

Plaintiff has complained of chronic back pain beginning in 2007.  (AR 258.)  He experiences pain is in his lower back that sometimes radiates down his leg.  (AR 276, 433, 486, 730, 756.)  The pain is "pretty bad all the time."  (AR 745.)  On December 28, 2018, Plaintiff described his back pain as a nine out of ten and that it "hurt[] like hell" to lie in the supine position.  (AR 727, 738.)  He tries to lie supine at night, but he wakes up every twenty to thirty minutes because the "pain is unbearable."  (AR 727.)  There are no stretches, exercises, or resting positions that give him "any lasting or even temporary relief."  (*Id.*)  Plaintiff was referred to a pain specialist for his lower back pain on January 16, 2019.  (AR 773.)

Plaintiff has complained of chronic pain in his left knee beginning around 2007 after he fell off a ladder at work and broke his knee.  (AR 258, 338, 482, 672.)  He experiences constant pain in his left knee, and the pain is worse when he bends it or walks on uneven pavement.  (AR 338.)

Plaintiff suffers from COPD and has complained of symptoms including shortness of breath, difficulty breathing, coughing, and chest congestion (AR 259, 403, 427, 430, 441, 486, 510, 512, 537, 610, 730) in addition to tongue and throat swelling (AR 413, 438, 463, 540, 621).

Plaintiff has a history of chronic, viral conjunctivitis, which causes irritation in his eyes.  (AR 482.)  He has complained of light sensitivity and blurred vision.  (AR 257, 463, 502.)

### 3.   Legal Standard

In determining whether a claimant is disabled, the ALJ must consider all of the claimant's symptoms, including the claimant's "statements about [his or her] symptoms, such as pain, and any description [the claimant's] medical sources or nonmedical sources may provide about how the symptoms affect [the claimant's] activities of daily living and . . . ability to work." 20 C.F.R. § 416.929(a).  The Ninth Circuit has established a two-part test "to determine whether a claimant's testimony regarding subjective pain or symptoms is credible." *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007)).  At the first step, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (citations omitted).  If the claimant satisfies the first step and there is no determination of malingering by the ALJ, "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

In weighing the credibility of the claimant's testimony, the ALJ may use "ordinary techniques of credibility evaluation." *Id.* at 1284.  The ALJ may consider the "inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work records, and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which he complains." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).  If the ALJ's credibility finding is supported by

substantial evidence in the record, the court may not engage in second-guessing.  *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citing *Morgan v. Comm'r of Soc. Sec.*, 169 F.3d 595, 600 (9th Cir. 1999)).

General findings, however, are insufficient; the ALJ must "specifically identify the testimony from a claimant [the ALJ] finds not to be credible and . . . explain what evidence undermines this testimony." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014); *accord Smolen*, 80 F.3d at 1284 ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion."); *see also Vasquez v. Astrue*, 572 F.3d 586, 592 (9th Cir. 2009) ("To support a lack of credibility finding, the ALJ [is] required to point to specific facts in the record."); *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) ("The ALJ must provide clear and convincing reasons to reject a claimant's subjective testimony, by specifically identifying what testimony is not credible and what evidence undermines the claimant's complaints."). The ALJ's findings must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Thomas*, 278 F.3d at 958.

4.   Discussion

Here, after determining Plaintiff's RFC, the ALJ began his credibility determination with the following boilerplate language:

> In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSR 16-3p.  The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 416.927.

(AR 13.)   The ALJ then detailed the two-step process used to consider a claimant's symptoms and summarized Plaintiff's symptom testimony made at the administrative hearing:

> The claimant testified to pain in his arms, legs, and back.   The claimant testified that he had conjunctivitis for a couple of years, with pain in his eyes. Yet, he states that this has not affected his vision and he can see.  He testified to COPD and obstruction in his lungs.  He testified that he has diabetes, which

10

causes weakness, dizziness, and blurriness. He testified to numbness and tingling in his left leg. He testified to an irregular heartbeat, for which he takes preventative medication. He testified that he cannot reach overhead at all due to his shoulders. He testified [that] doctors have recommended surgery for his shoulders and the left knee, where he has not had surgery.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(AR 14.) The ALJ then proceeded to weigh the medical opinion evidence and summarize the objective medical evidence concerning Plaintiff's medically determinable impairments of COPD, obesity, degenerative disc disease of the lumbar spine, and degenerative joint disease. (*See* AR 14–15.)

Because the ALJ determined that Plaintiff's medically determinable impairments could be expected to cause his alleged symptoms and did not find Plaintiff to be malingering, the issue before the Court is whether the ALJ provided specific, clear, and convincing reasons for rejecting Plaintiff's testimony regarding the intensity, persistence, and limiting effects of his symptoms. The Court finds that the ALJ failed to do so.

As an initial matter, although the ALJ provided a cursory summary of Plaintiff's symptom testimony from the administrative hearing, he never specifically identified what testimony or statements of Plaintiff's he found not credible. The ALJ's boilerplate language that Plaintiff's "statements concerning the intensity, persistence[,] and limiting effects" of his symptoms is not an identification of which statements the ALJ found not credible. *E.g.*, *Rios v. Saul*, Case No.: 19cv704-LL, 2020 WL 71080, at *6 (S.D. Cal. Jan. 7, 2020). Except for perhaps one instance, nowhere in the hearing decision does the ALJ "identify the testimony [he] found not credible and link that testimony to the particular parts of the record supporting [his] non-credibility determination." *Brown–Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015). Instead, as Plaintiff argues, the ALJ simply

summarized Plaintiff's testimony and treatment record without connecting any of Plaintiff's subjective complaints to the evidence allegedly undermining them.  (*See* ECF Nos. 18 at 15; 26 at 4.)  This was error.  *See Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) ("[P]roviding a summary of medical evidence . . . is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible." (quoting *Brown–Hunter*, 806 F.3d at 494)).

The Court can only discern one instance where the ALJ identified a specific allegation made by Plaintiff and connected it to allegedly undermining evidence.  After evaluating the opinion of consultative examiner Dr. Nossa Maya, the ALJ noted that Plaintiff's "allegation of complete inability to reach overhead" was inconsistent with two treatment records that showed "some limitation of the range of motion."  (AR 15.)  The ALJ first cited to the internal medicine consultation performed by Dr. Maya on March 19, 2017.  (AR 261.)  Upon examination, Dr. Maya found that Plaintiff's range of motion in his shoulders was limited to 150/180 degrees of flexion and "120/140"[4] degrees of abduction.  (*Id.*)  The ALJ also cited to physical therapy notes from September 8, 2017, where Plaintiff's range of motion in his shoulders was limited to 115/180 degrees of flexion and 110/180 degrees of abduction.  (AR 380.)  Neither Plaintiff nor the Commissioner provide any argument concerning the ALJ's conclusion that Plaintiff's testimony was inconsistent with these medical records.[5]

To the extent the ALJ made this conclusion as part of his credibility determination, and not simply as part of his evaluation of Dr. Maya's opinion, the Court does not find that

---

[4]     Presumably this is a typographical error and should read 120/180.

[5]     The Commissioner does not argue that the ALJ's conclusion about an inconsistency between Plaintiff's overhead reach testimony and the medical evidence was a legitimate reason put forth by the ALJ in support of his credibility determination.  Instead, as addressed below, the Commissioner argues that the ALJ asserted three other "compelling reasons for finding Plaintiff's subjective allegations of disabling symptoms inconsistent with the record overall."  (ECF No. 25 at 15–18.)

it constitutes a clear and convincing reason for discrediting Plaintiff.  As stated above, Plaintiff testified at the hearing on January 17, 2019, that he could not put his arms "over [his] head" and answered no when the ALJ asked if he could "reach overhead at all."  (AR 35.)  Plaintiff's testimony, which the ALJ characterizes as an "allegation of complete inability to reach overhead," is not inconsistent with the objective medical evidence to which the ALJ cites.  Evidence of a flexion range of 115–150/180 and an abduction range of 110–120/180 in the shoulders is not inconsistent with an allegation that one cannot reach overhead.  These measurements indicate a range of motion limited to 20 to 60 degrees above shoulder level or, in other words, between 30 and 70 degrees short of direct overhead reaching.  Without further explanation by the ALJ, at least with respect to his interpretation of "overhead," his statement that Plaintiff's "allegation of complete inability to reach overhead" was inconsistent with the objective medical evidence is neither clear nor convincing.

Turning to the arguments made in the Cross-Motion for Summary Judgment, the Commissioner argues that the ALJ provided three other clear and convincing reasons for discrediting Plaintiff's symptom testimony: lack of objective medical evidence, evidence of non-compliance with prescribed treatment, and inconsistency with the objective medical opinions.  (*See* ECF No. 25 at 15–18.)  The Court disagrees.

With respect to his first proffered clear and convincing reason, the Commissioner argues that the ALJ "noted a lack of objective medical support," but the Commissioner fails to identify any specific statement made by the ALJ concerning a lack of objective evidence undermining the credibility of Plaintiff's symptom claims.  To the extent the Commissioner is referring to the ALJ's boilerplate statement that Plaintiff's "statements concerning the intensity, persistence[,] and limiting effects of [his] symptoms are not entirely consistent with the medical evidence," the Court reiterates this is not an identification of specific testimony, and the ALJ's failure to identify what testimony he

///

///

found not credible precludes meaningful judicial review.[6]  Again, "it was incumbent on the ALJ to state specifically which symptom testimony was not credible and what facts or evidence in the record supported that conclusion.  It is not the Court's function to comb through the administrative record for specific conflicts or inconsistencies between [a] plaintiff's symptom testimony and the medical evidence and other evidence of record." *Kenneth M. v. Saul*, 19-cv-00110-AJB (RNB), 2019 WL 4674317, at *4 (Sept. 25, 2019).

With respect to his second proffered clear and convincing reason, the Commissioner argues that the ALJ properly discredited Plaintiff's symptoms because they were "inconsistent with evidence of conservative treatment or non-compliance with prescribed treatment."  (ECF No. 25 at 16.)  The Commissioner first contends that the ALJ properly rejected Plaintiff's symptom testimony concerning his COPD by reasoning that Plaintiff was never hospitalized or had to go to an emergency room.  (*Id.* at 17.)  The Court, however, does not find Plaintiff's failure to need extraordinary measures to treat his COPD as a convincing reason to undermine the allegations that his COPD caused him breathing difficulties to the extent he described.  Although Plaintiff's COPD did not necessitate hospitalization or trips to an emergency room, he did seek treatment for it.  (*E.g.*, AR 259, 403, 427, 430, 441, 486, 510, 512, 537, 610, 730.)  The Commissioner also maintains that the ALJ's observation that Plaintiff "continue[d] to smoke [half a] pack [of cigarettes] per day" (AR 14 (citing AR 730 (dated September 25, 2018)) constitutes a finding that Plaintiff was not compliant with his COPD treatment or his "condition was not as restrictive as he claimed."  (ECF No. 25 at 17.)  First, the ALJ does not make this analysis himself, and the

---

[6]     Moreover, although a claimant's testimony as to the severity of his symptoms and a lack of objective medical evidence may constitute a basis on which an ALJ could properly rely in support of an adverse credibility determination, it cannot constitute the sole reason supporting the determination. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc)).  As discussed below, the Court finds that the Commissioner's second and third arguments fail as well, so the ALJ could not solely rely on a lack of objective medical evidence to discredit Plaintiff.

Court is "constrained to review the reasons the ALJ asserts," especially with respect to a credibility determination, for it is "exclusively the ALJ's to make." *Lambert*, 980 F.3d at 1278 (quoting *Brown–Hunter*, 806 F.3d at 949). Second, even if the ALJ himself had set forth this rationale, the Court would not find Plaintiff's continued tobacco use to be a clear and convincing reason to reject his COPD symptom testimony. At the hearing on January 17, 2019, Plaintiff testified that he had in the *past* smoked ten cigarettes a day (half a pack), but he had "cut that down," was smoking "way under five," and was "trying to quit." (AR 38.) Under these circumstances, Plaintiff's continued smoking was not a legally sufficient reason to support a finding of adverse credibility on this issue. *See also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (finding that a claimant's continued smoking habit likely did not adversely impact her credibility because it was "certainly possible that [she] was so addicted to cigarettes that she continued smoking even in the face of debilitating shortness of breath").

The Commissioner next argues that the ALJ properly discredited Plaintiff's symptom testimony by noting that Plaintiff "historically did not comply with treatment for his various other issues of obesity, high blood pressure, diabetes, and orthopedic complaints." (ECF No. 25 at 17.) Although the ALJ did note that Plaintiff had "a history of noncompliance and has not taken medication for periods in the past" (AR 14), Plaintiff's noncompliance with treatment is not a clear and convincing reason to discredit him based on the record in this case. Plaintiff testified at the hearing that he lives in his truck and that his homelessness makes it difficult for him to follow a consistent treatment regimen. (*See* AR 34, 41; *see also* AR 427 ("[Patient] is homeless and lives in his car.").) For example, Plaintiff testified that he is prescribed diabetes medication that requires refrigeration, but he does not have a refrigerator. (AR 34.) Plaintiff also stated that he needs a CPAP machine to treat his sleep apnea, but he does not have electricity. (*Id.*) Further, treatment notes in Plaintiff's various medical records detail that he had not been consistent with his treatment regimen because he was without medical insurance. (*See* AR 280, 490 ("[Patient] has a history of hypertension and diabetes and has not been following up

because he lost his medical insurance."); 259 ("He was not taking any medications since he has no medical insurance."); 502 ("48 yo male without medical coverage here to establish care.").)  "Where a claimant provides evidence of a good reason for not taking medication for [his] symptoms, [his] symptom testimony cannot be rejected for doing so." *Smolen*, 80 F.3d at 1284.  The Court finds that Plaintiff's homelessness and lack of medical insurance help explain his "history of noncompliance," and thus, it is not a clear and convincing reason for discrediting his symptom testimony.  *See id.* ("[Plaintiff] presented testimony at the hearing that she had not sought treatment . . . because, as a result of not being able to maintain a job, she had no medical insurance and could not afford treatment. . . . Thus, the fact that [she] was not taking medication is not a clear and convincing reason for discrediting her symptom testimony.").[7]

With respect to the Commissioner's third proffered clear and convincing reason— the ALJ found Plaintiff's allegations of disability inconsistent with the medical opinions regarding Plaintiff's conditions—the Court agrees with Plaintiff that the ALJ's "weighing of opinion evidence cannot be rewritten into an evaluation of Plaintiff's testimony." (ECF No. 26 at 4.)  Except for the ALJ's identification on a purported inconsistency with Plaintiff's testimony concerning his ability to reach overhead, the ALJ does not address any of Plaintiff's symptom testimony when evaluating the three medical source opinions.

Because the ALJ failed to set forth clear and convincing reasons for his adverse credibility finding, the Court cannot "conclude that the ALJ did not arbitrarily discredit" Plaintiff's symptom statements and testimony, specifically Plaintiff's complaints of pain and limitations stemming from his shoulder, knee, and back impairments.  Thus, the ALJ erred.  Further, the Court is unable to determine that the ALJ's error was "inconsequential

---

[7]      Furthermore, the Court agrees with Plaintiff that "a lack of hospitalization for breathing problems" or "non-compliance with diabetic medications" would not undermine Plaintiff's testimony concerning his orthopedic impairments and resulting complaints of pain.  (ECF No. 26 at 5.)

19-cv-01660-JLB

to the ultimate nondisability determination" and therefore harmless. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012).

**B.     The ALJ's Rejection of Dr. Allsing's Opinion**

       1.     Parties' Arguments

The Court's conclusion that the ALJ failed to properly discredit Plaintiff's symptom testimony renders it unnecessary to address Plaintiff's other claim that the ALJ erred in rejecting Dr. Allsing's opinion.  The credibility assessment error, in and of itself, merits remand.  Nevertheless, the Court sees fit to address Plaintiff's claim related to the weighing of opinion testimony, for the Court finds that the proper remedy in this case is remand, as discussed *infra*.

As stated above, Plaintiff argues that the ALJ failed to set forth specific, legitimate reasons based on substantial evidence in the record for rejecting Dr. Allsing's opinion that Plaintiff was limited to sedentary work with a non-exertional limitation of no reaching above shoulder level.  (ECF No. 18 at 12–14.)  Specifically, Plaintiff contends that the ALJ relied on his own interpretation of a select few clinical findings of normal gait and motor strength to reject Dr. Allsing's opinion, but Dr. Allsing's opinion about Plaintiff's reach limitations was supported by range of motion findings.  (*Id.* at 12–13.)  According to Plaintiff, "[t]he ALJ's references to a few clinical findings, which did not contradict the basis of Dr. Allsing's opinion, did not provide a legitimate basis for discounting the well-supported opinion of a treating source." (*Id.* at 13.)

In response, the Commissioner maintains that the ALJ properly rejected Dr. Allsing's opinion by citing to physical exams showing that "Plaintiff was not further limited in . . . exertional strength than light work or walking or standing six hours in an eight-hour workday." (ECF No. 25 at 11.)  The Commissioner further contends that the ALJ "properly gave less weight to Dr. Allsing's restrictions because they were not consistent with the record evidence." (*Id.* at 13.)  The Commissioner posits that, to the extent the ALJ erred in omitting a limitation of "no overhead reaching" in the RFC, the error is harmless, because the VE testified that Plaintiff would be able to perform work as

a bench assembler, survey worker, and inspector/packager "[e]ven with the additional restriction of no overhead reaching." (*Id.* at 13–14.)

### 2.   Legal Standard

Three types of physicians may offer opinions in Social Security cases: (1) those who directly treated the claimant; (2) those who examined but did not treat the claimant; and (3) those who did neither. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating physician's opinion is generally entitled to more weight than an examining physician's opinion, and an examining physician's opinion is generally entitled to more weight than a non-examining physician's opinion. *Id.* This is so because treating physicians are employed to cure and have a greater opportunity to know and observe the claimant. *Smolen*, 80 F.3d at 1285. The law is well established in the Ninth Circuit that, if the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830. Where a treating physician's opinion is controverted, it may be rejected only if the ALJ makes findings setting forth "specific and legitimate reasons" that are based on "substantial evidence in the record" for rejecting the opinion. *Id.* (citing *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

Under the regulations governing claims filed before March 27, 2017, such as here, if a treating physician's opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, it should be given controlling weight. 20 C.F.R. § 416.927(c)(2). Where substantial evidence in the record contradicts the treating physician's opinion, or the opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques, it is no longer entitled to controlling weight. *Id.*; *see also Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). That does not mean, however, that the opinion should be rejected, for "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996); *see also Orn*, 495 F.3d at 632–33 ("Even when contradicted by an opinion of an examining physician that constitutes substantial evidence,

19-cv-01660-JLB

the treating physician's opinion is 'still entitled to deference.'" (quoting SSR 96–2p, 1996 WL 374188, at *4)).

3.   Discussion

Dr. Allsing is an orthopedic physician who treated Plaintiff's shoulder and knee impairments, recommended Plaintiff for physical therapy, and when physical therapy proved unsuccessful, recommended surgery to Plaintiff. (*See* AR 265–68, 332–35, 572–81, 714–25.) On October 22, 2018, Dr. Allsing completed a Medical Information Questionnaire, diagnosing Plaintiff with bilateral shoulder impingement syndrome and a medial meniscus tear in the left knee. (AR 724.) Dr. Allsing reported that Plaintiff's range of motion is his shoulders bilaterally was limited to 90/180 degrees of active flexion, 150/180 degrees passive flexion, 45/90 degrees of external rotation, and 45/90 degrees of internal rotation. (*Id.*) Because of Plaintiff's shoulder and knee impairments, Dr. Allsing opined that Plaintiff was limited to sedentary work with a limitation of no reaching above shoulder level, but Plaintiff would be able to sit at a desk or workbench and perform activities with his arms extended in front of him for eight hours per day. (AR 724–25.) This opinion was controverted by consultative examiner Dr. Maya's opinion that Plaintiff was limited to light work with, *inter alia*, occasional overhead activities bilaterally. (AR 262.) The ALJ was therefore required to set forth specific and legitimate reasons based on substantial evidence in the record for rejecting Dr. Allsing's opinion.

The ALJ discussed Dr. Allsing's opinion in as follows:

Steven Allsing, M.D., the claimant's treating orthopedic doctor, assessed the claimant with a reduced sedentary exertional level, with no reaching above shoulder level (Exhibit 18F). This is inconsistent with the record, where radiographic scans and physical exams indicated some positive findings (Exhibits 14F/11-14, 17F/7), yet the claimant also had a normal gait and generally 5/5 motor strength in the bilateral upper and lower extremities, 4/5 strength in the shoulders (Exhibits 1F/9, 3F, 8F/36, 9F/56-58). Dr. Allsing also found that the claimant would be able to work full-time at a job where he sat at a desk or work-bench and performing activities with the arms extended in front of him, which generally supports the finding [that] the claimant can

1    perform other work (Exhibit 18F/2).  I give more weight to the opinion of the
2    reconsideration level DDS consultant, as discussed.

3    (AR 15.)

4         The Court finds that the ALJ did not set forth specific and legitimate reasons
5    supported by substantial evidence for rejecting Dr. Allsing's opinion.  As highlighted by
6    Plaintiff, Dr. Allsing's opinion that Plaintiff had an above-the-shoulder reaching restriction
7    was supported by findings concerning Plaintiff's limited range of motion in his shoulders,
8    specifically that Plaintiff was limited to 90/180 degrees of active flexion (meaning that
9    Plaintiff could not actively raise his arms above shoulder level), 45/90 degrees of external
10   rotation, and 45/90 degrees of internal rotation.  (AR 724.)  Dr. Allsing's findings in his
11   Medical Information Questionnaire are consistent with treatment notes from Plaintiff's first
12   shoulder appointment on August 15, 2017, where Plaintiff's shoulders demonstrated active
13   flexion of 90/180 degrees, external rotation of 45/90 degrees, and internal rotation of 45/90
14   degrees.  (AR 334.)  Dr. Allsing also saw Plaintiff for a follow-up shoulder visit on
15   September 12, 2017, after Plaintiff had attended twelve sessions of physical therapy.  (AR
16   576.)  Plaintiff reported no improvement with physical therapy, stating that his shoulder
17   pain had actually "worsened as a result of the [physical therapy]," and Dr. Allsing
18   recommended surgery (shoulder arthroscopy with open subacromial decompression,
19   mumford distal clavicle excision, and possible rotator cuff repair) after Plaintiff completed
20   a cardiac clearance.  (*Id.*)  Plaintiff's physical therapy records, to which the ALJ cites in
21   support of rejecting of Dr. Allsing's opinion, document a continuing limitation in shoulder
22   flexion, reporting that Plaintiff's shoulder flexion was 115/180 degrees bilaterally on
23   August 7, 2017.  (AR 380.)  The ALJ's findings that Plaintiff had a normal gait and retained
24   motor strength in his extremities and shoulders are not legitimate reasons for rejecting Dr.
25   Allsing's opinion concerning Plaintiff's reaching limitations, which were based on clinical
26   findings of a limited range of motion in Plaintiff's shoulders and diagnosis of bilateral
27   impingement syndrome.  Thus, the ALJ erred in this respect.
28   ///

The Commissioner nonetheless maintains that the ALJ's findings concerning Plaintiff's gait and motor strength are legitimate reasons for rejecting Dr. Allsing's opinion that Plaintiff was limited to sedentary work. (AR 15; ECF No. 25 at 11.)  In reply, Plaintiff argues that the ALJ provided no support for the proposition that a 5/5 or 4/5 motor strength translates to an ability to perform light work, i.e., lifting no more than 20 pounds and frequently lifting or carrying 10 pounds, and the ALJ's "lay speculation" is insufficient to reject Dr. Allsing's opinion.  (ECF No. 26 at 3.)  Even if the Court were to accept that findings concerning motor strength could serve as substantial evidence for the amount of weight one is able to lift or carry, a claimant's ability to do light work is not based solely on his or her weight-lifting abilities.  The regulations define light work as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. 416.967(b).

Both the Commissioner's argument and the ALJ's conclusion overlook the fact that Dr. Allsing's opinion was based not only on Plaintiff's shoulder limitations but also on his diagnosis of a medial meniscus tear in Plaintiff's left knee. (AR 724.)  At Plaintiff's first knee appointment with Dr. Allsing on March 29, 2018, Dr. Allsing noted an extension and flexion range of motion of 0/120, as well as positive PFG and McMurray's test. (AR 340–41.)  Dr. Allsing took x-rays of Plaintiff's knee and ordered an MRI. (*Id*.)  As partially[8] noted by the ALJ, the MRI ordered by Dr. Allsing showed a suspected horizontal tear

---

[8]     The ALJ failed to mention the radiologist's fourth impression of Plaintiff's left knee: bipartite patella with mild overlying chondromalacia and degenerative changes at the synchondrosis. (*See* AR at 14–15.)

19-cv-01660-JLB

through the posterior horn of the medial meniscus with associated small paramenscal cyst, an intact cruciates and lateral meniscus, a prominent multiloculated cystic structure along the superior aspect of the upper popliteus muscle (most likely a ganglion cyst), and bipartite patella with mild overlying chondromalacia and degenerative changes at the synchondrosis. (AR 14–15, 709.) In Plaintiff's follow-up visit on July 3, 2018, Dr. Allsing noted that Plaintiff had completed 12 sessions of physical therapy for his left knee but had no improvement in his pain. (AR 716.) Upon examination of Plaintiff's left knee, Dr. Allsing noted an extension and flexion range of 0/140 and positive MJLT and McMurray's test. (*Id.*) Dr. Allsing also confirmed his diagnosis of complex tear of the medial meniscus and recommended surgery (arthroscopy with partial meniscectomy) after Plaintiff completed a cardiac clearance. (AR 716–17.)

Although the ALJ found that Plaintiff had a normal gait,[9] the records he cited to in support are not substantial evidence that Plaintiff could perform work that requires a "good deal of walking or standing" in light of his left knee impairment. As noted by the ALJ, Dr. Allsing also opined that Plaintiff should be restricted to work where he could sit at a desk or workbench. (AR 15, 724.) Moreover, because Plaintiff's first visit with Dr. Allsing for his knee was not until March 28, 2018, neither the state agency physician nor consultative examiner Dr. Maya, who both opined that Plaintiff could perform light work, ever reviewed Dr. Allsing's records, including the results of Plaintiff's left knee MRI. Accordingly, the ALJ erred, for his findings that Plaintiff retained motor strength in his shoulders and extremities and had a normal gait are not legitimate reasons for rejecting Dr. Allsing's opinion that Plaintiff was limited to sedentary work.

---

[9]     The ALJ cites to two records as support for a finding that Plaintiff's gait was normal. Exhibit 1F/9 is a February 26, 2016 record from Family Health Centers of San Diego where Plaintiff was requesting antibiotics for a sinus congestion. (AR 239.) This record simply notes "Neuro: normal gait." (*Id.*) Exhibit 3/F is Dr. Maya's March 19, 2017 consultative examination wherein Dr. Maya noted that plaintiff had a normal gait and could walk independently without an assistive device. (AR 260.)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Additionally, the Court cannot conclude, as the Commissioner contends, that any error by the ALJ in failing to include a limitation of no overhead reach in the RFC was harmless.  At Step Five, the ALJ identified three jobs that a hypothetical person with Plaintiff's RFC could perform: bench assembler, survey worker, and inspector/packager. (AR 16–17.)  Although the Commissioner is correct that the VE testified that a hypothetical person with Plaintiff's RFC and an additional limitation of "no overhead reaching" could still work as a bench assembler, survey worker, and inspector/packager (AR 48), per the DOT, work as a bench assembler, survey worker, or inspector/packager requires frequent reaching.[10]  *Assembler, Small Products I*, DOT No. 706.684-022, 1991 WL 679050; *Survey Worker*, DOT No. 205.367–054, 1991 WL 671725; *Inspector & Hand Packager*, DOT No. 559.687–074, 1991 WL 683797.  Thus, there is an apparent conflict between the VE's testimony that a hypothetical person restricted to either no overhead reaching or no above-the-shoulder reaching could perform these three jobs, which all have frequent reaching requirements.  This conflict was brought to the ALJ's attention after the administrative hearing was held, but before the ALJ issued his decision, in a letter Plaintiff's attorney wrote to the ALJ.  (AR 223.)  Despite this letter, the ALJ did not acknowledge the apparent conflict in his hearing decision and stated that the VE's testimony was consistent with the DOT.  (AR 17.)  Absent a reasonable explanation[11] for the apparent conflict between the VE's testimony and the DOT, the ALJ could not properly rely on the VE's testimony as substantial evidence to support his determination that Plaintiff could work as a bench

---

[10]    The DOT's companion publication, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles ("SCO"), defines reaching as "[e]xtending hand(s) and arm(s) in *any* direction."  SCO, App. C (emphasis added).

[11]    The Court notes that the VE did not directly explain how a limitation of no reaching above shoulder level would be compatible with jobs that require frequent reaching, but he did describe the work of a bench assembler as "assembling without having to extend the elbows from the body."  (AR 50.)

assembler, survey worker, or inspector/packager.  *See* SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000); *Massachi v. Astrue*, 486 F.3d 1149, 1152–54 (9th Cir. 2007).

Moreover, even if the ALJ's omission of non-exertional reaching limitations in the RFC was ultimately harmless because the VE could explain his deviation from the DOT, the Court cannot conclude that the ALJ's rejection of Dr. Allsing's opinion that Plaintiff was limited to sedentary work was harmless.  Plaintiff's Motion for Summary Judgment sets forth an argument, albeit briefly, that a sedentary RFC would render Plaintiff disabled per Medical–Vocational Guideline Rule 201.14.[12]  (AR 13.)  The Commissioner makes no argument in response, which the Court interprets as a concession that Plaintiff would be found disabled, were he limited to a sedentary RFC.

## C.   Remand is Appropriate

The law is well established that the decision whether to remand for further proceedings or simply to award benefits is within the discretion of the Court.  *See, e.g.*, *Salvador v. Sullivan*, 917 F.2d 13, 15 (9th Cir. 1990); *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989); *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981).  Remand for further proceedings is warranted where additional administrative proceedings could remedy defects in the decision.  *See, e.g.*, *Kail v. Heckler*, 722 F.2d 1496, 1497 (9th Cir. 1984); *Lewin*, 654 F.2d at 635.  Remand for the payment of benefits is appropriate where no useful purpose would be served by further administrative proceedings, *Kornock v. Harris*, 648 F.2d 525, 527 (9th Cir. 1980), where the record has been fully developed,

---

[12]    Medical–Vocational Guideline Rule 201.14, set forth in 20 C.F.R. Part 404, Subpart P, App. 2, indicates that a claimant is considered disabled if he or she: (1) is limited to sedentary work; (2) is closely approaching advanced age (age 50–54); (3) has an education of high school graduate or more but does not provide direct entry into skilled work; and (4) has prior work experience of skilled or semiskilled but skills are not transferable.  Plaintiff is currently 52 years old, graduated from high school, and has no skills that are transferable from his past work as a contractor (skilled) and newspaper delivery driver (semi-skilled). (AR 32, 57.)

*Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986), or where remand would unnecessarily delay the receipt of benefits to which the disabled plaintiff is entitled, *Bilby v. Schweiker*, 762 F.2d 716, 719 (9th Cir. 1985).

Plaintiff asserts that the proper remedy in this case is remand and not an award of benefits.  (ECF No. 18 at 16.)  The Court agrees.  This is not an instance where further administrative proceedings would serve no useful purpose.  On remand, the ALJ may be able to provide legally sufficient reasons for rejecting Dr. Allsing's opinion, resolve any conflict between the VE's testimony and the DOT, or specifically identify the symptom testimony he attempted to discredit and provide clear and convincing reasons for doing so. Accordingly, remand is appropriate.

## VI.   <u>CONCLUSION</u>

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion for Summary Judgment (ECF No. 18) and **DENIES** the Commissioner's Cross-Motion for Summary Judgment (ECF No. 25).   Judgment shall be entered reversing the decision of the Commissioner and remanding this matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Dated:  March 30, 2021

*Jill Burkhardt*

Hon. Jill L. Burkhardt
United States Magistrate Judge